803 So.2d 884 (2002)
Frank W. YUNGER and Paula G. Yunger, Appellants,
v.
Buenaventura OLIVER, Appellee.
No. 5D01-697.
District Court of Appeal of Florida, Fifth District.
January 4, 2002.
*885 Frank W. Yunger and Paula G. Yunger, Altamonte Springs, pro se.
No Appearance for Appellee.
SAWAYA, J.
Frank and Paula Yunger, pro se, appeal the order striking their counterclaim as a sham pleading in this landlord/tenant dispute. The landlord, Buenaventura Oliver, has not filed an answer brief. Suffice it to say that the Yungers' failure to secure counsel greatly complicated the proceedings below. In any event, our thorough review of the record has revealed no grounds for reversal, and thus we affirm.
In October 1999, the 22 year old central air conditioning unit in the home the Yungers had rented for over three years broke down. After an unsuccessful three days of trying to notify Oliver of the broken air conditioning unit, the Yungers had a licensed professional install a new system at a cost of $1246. Whether the amount the Yungers paid for the unit was reasonable and whether the Yungers could properly deduct the amount they paid from rents due became the crux of a dispute between the parties.
Ultimately, Oliver filed a complaint for eviction and for past due rent. After several hearings, the trial court ordered the Yungers to give up possession by January 31, but acknowledged that all other issues remained pending between the parties. The Yungers did not timely vacate the premises and were angered when Oliver obtained a writ of possession and changed the locks, which act prevented the Yungers from retrieving books they had left in the garage.
After their original counterclaim was dismissed, the Yungers filed an amended *886 counterclaim. The amended counterclaim alleged (1) intentional fraudulent misrepresentation which asserted that in reliance on Oliver's representation that he would immediately make repairs, the Yungers had signed a renewal lease; (2) damages for Oliver's act of preventing the Yungers reasonable access to the dwelling for the month of February; (3) damages for civil theft based on the allegation that Oliver had prematurely entered the property after the court had ordered the Yungers to depart and had obtained some 4000 books valued at $8600 which the Yungers had left behind; (4) reduction of rents and damages for breach of contract based on Oliver's alleged failure to replace the air conditioning unit; and (5) conversion of security deposit.
The trial court rendered an order striking the Yungers' counterclaim as a sham pleading pursuant to Oliver's motion. The court also ordered that Paula Yunger be stricken from the case for failure to appear and failure to be represented by counsel and further ordered that Frank Yunger would have 30 days from the date of the order to reclaim his books, after which time Oliver could dispose of them as he pleased. The Yungers timely filed their notice of appeal from this order.[1]
In Destiny Construction Company v. Martin K. Eby Construction, 662 So.2d 388 (Fla. 5th DCA 1995), this court began its analysis of an allegedly sham pleading by addressing the standard by which a pleading challenged as a sham must be tested. It wrote:
Because striking a pleading is an extreme measure, it is not favored in the law. Slatko v. Virgin, 328 So.2d 499, 500 (Fla. 3d DCA 1976). In order to warrant the rejection of a pleading as a "sham plea," the pleading must be a mere pretense, set up in bad faith and without color of fact. Ader v. Temple Ner Tamid, 339 So.2d 268, 270 (Fla. 3d DCA 1976). Accord Meadows v. Edwards, 82 So.2d 733 (Fla.1955); Sapienza v. Karland, Inc., 154 So.2d 204 (Fla. 3d DCA 1963). In other words, a plea is considered a sham when it is inherently false and, based on plain or conceded facts, clearly known to be false at the time the pleading was made. Menke v. Southland Specialties Corp., 637 So.2d 285 (Fla. 2nd DCA 1994); West Palm Golf Commission v. Adams, 633 So.2d 568 (Fla. 4th DCA 1994). In ruling upon a motion to strike, the trial court must resolve all doubts in favor of the pleading. Meadows, 82 So.2d at 735. Thus, on review, where there is no showing that a pleading was plain fiction or undoubtedly false, the pleading must be reinstated. Menke, 637 So.2d at 285. Accord Jaruagua Enterprises, Inc. v. Dom, Inc., 339 So.2d 702 (Fla. 3d DCA 1976); Slatko v. Virgin, 328 So.2d 499 (Fla. 3d DCA 1976).
Id. at 390. See also Meadows v. Edwards, 82 So.2d 733, 735 (Fla.1955) ("In order to justify the striking of a pleading for being sham or false it must be so undoubtedly false as not to be subject to a genuine issue of fact.... A motion to strike a pleading as false should not be granted under the circumstances when a motion for *887 a directed verdict or a motion for a summary judgment could not properly be granted. If there is any substantial evidence to support the party against whom the motion is made, then the motion should be denied.").
Although this court has determined the correct standard of review, we find that not every count alleged in the Yungers' counterclaim is susceptible of review at this time. Because Oliver's complaint for eviction and non-payment of rent is still pending, those counts raised in the counterclaim which are inextricably interrelated with the complaint may not be addressed in this appeal. See S.L.T. Warehouse Co. v. Webb, 304 So.2d 97 (Fla. 1974) (holding that order granting the motion to dismiss counterclaim was not a final appealable order where claims were interrelated and involved the same transaction; noting that any assertions of error in the order may be reviewed on appeal from the final judgment). Only those counterclaims which are not compulsory may now be addressed. S.L.T. Warehouse; Sarasota Cloth Fabric & Foam, Inc. v. Benes, 482 So.2d 574 (Fla. 5th DCA 1986) (dismissing appeal as to those counts of the counterclaim which were dependent upon and arose out of the same contract which the plaintiff had sued upon).[2] This jurisdictional determination must be made prior to any review of the merits of the Yungers' arguments.
Here, count one (fraudulent inducement to enter the lease), count four (reduction of rents and breach of contract) and count five (return of security deposit) of the counterclaim clearly arose out of the lease agreement and transaction, or, as in the case of count five, raise additional legal rights which otherwise would have laid dormant, and are thus compulsory. Review of the propriety of the striking of these counts must wait until the conclusion of the entire case. S.L.T. Warehouse. The second count of the counterclaim seeking damages for preventing the Yungers from access to the home and the third count of the counterclaim for civil theft for keeping books the Yungers had left in the garage are both permissive counterclaims, the dismissal of which may be addressed in this appeal.
Having determined that only counts two and three raise permissive counterclaims, we now direct our attention to the merits of the dismissal of each of those two counts. It is appropriate to review each permissive count of the counterclaim separately and reverse only those counts of the counterclaim which were improperly stricken as shams. Sapienza v. Karland, Inc., 154 So.2d 204, 207 (Fla. 3d DCA 1963) (holding that a pleading should not be stricken in its entirety if there is an issue upon which the pleading could be found good in part).
Count two of the counterclaim seeking damages for preventing reasonable *888 access to the dwelling was correctly stricken as a sham. The basis for this claim is the Yungers' assertion that they had lawful possession of the house on February 3 and that Oliver had committed an illegal entry or breaking and entry on that date for the purpose of changing the locks, thus preventing the Yungers from entering after February 3. Because the court had previously ordered that the Yungers turn over possession of the premises by January 31 and that order was never appealed, the counterclaim for damages based on Oliver's act of entering on February 3 was wholly without merit.
As to count three of the counterclaim for civil theft, it too is based on the Yungers' contention that Oliver unlawfully retook possession on February 3 and acquired the books which the Yungers had left in the garage. Again, Oliver's repossession was pursuant to the court's unchallenged order and was not premature or unlawful. Thus, the contention that Oliver unlawfully took possession is inherently false and the count was properly dismissed as a sham. As a practical matter, the order striking the counterclaim did provide the Yungers with 30 days to remove their books, essentially giving the Yungers what they wanted-their books-and we acknowledge the trial court's effort to reach a just result.
In sum, counts one, four, and five of the counterclaim arose directly from the lease being sued upon and were thus compulsory counterclaims. As such, review of the propriety of the striking of these counts must await an appeal from the final judgment. Counterclaims two and three are permissive counterclaims and are reviewable in this appeal. We conclude that both permissive counterclaims were properly stricken as sham pleadings. Thus, to the extent that it addressed permissive counterclaims, the order on appeal is affirmed.[3]
AFFIRMED.
THOMPSON, C.J., and ORFINGER, R.B., J., concur.
NOTES
[1] The Yungers also filed notices of appeal from four other interlocutory orders. The attempted appeals from these additional interlocutory orders is premature as no final judgment has been rendered in the case. Further, even assuming (without deciding) that interlocutory appeals could have been taken from each order, the appeals would have been untimely as the notices of appeal were not filed within 30 days of the rendition of each order. Accordingly, the arguments the Yungers made as to the propriety of these orders have not been addressed.
[2] Londono v. Turkey Creek Inc., 609 So.2d 14 (Fla.1992) sets forth the test for determining whether a counterclaim is compulsory or permissive. The issue is one that ultimately turns on the existence of a "logical relationship" between the claim and counterclaim:

[A] claim has a logical relationship to the original claim if it arises out of the same aggregate of operative facts as the original claim in two senses: (1) that the same aggregate of operative facts serves as the basis of both claims; or (2) that the aggregate core of facts upon which the original claim rests activates additional legal rights in a party defendant that would otherwise remain dormant.
Id. at 20 (quoting Neil v. South Florida Auto Painters, Inc., 397 So.2d 1160, 1164 (Fla. 3d DCA 1981) (quoting Revere Copper & Brass, Inc., v. Aetna Casualty & Surety Co., 426 F.2d 709, 715 (5th Cir.1970))).
[3] Insofar as the order also contained a provision dismissing Paula Yunger from the case for her failure to appear at the January 29 hearing and not otherwise being represented by counsel, we conclude that the Yungers have failed to demonstrate an abuse of discretion under the facts of this case. We note that a default had actually been entered against Paula approximately a year earlier, via an unwritten order, for her failure to appear or be represented in this case, yet she continued to sign papers as if she were still a party without any objection by Oliver. Although a party has the right to represent himself or herself in a legal proceeding, the party must adhere to the rules of court. See § 454.18, Fla. Stat. (2000) (providing that parties have the right to self-representation in a court of law "subject to the lawful rules and discipline of such court...."). We consider the prior oral ruling to, at the very least, have placed Paula on notice of the court's requirement that she appear or be represented, which requirement we find well within the trial court's discretion, and her subsequent failure to appear or be represented constituted a willful and intentional disregard of this inherently reasonable requirement. See Arango v. Alvarez, 585 So.2d 1131, 1133 (Fla. 3d DCA 1991) (upholding default judgment against pro se litigants for failure to appear at calendar call; holding, "[W]e find that it was not an abuse of the trial court's discretion to interpret the defendants' failure to appear at the calendar call, after the defendants had already established a pattern of disobeying and/or ignoring the earlier orders entered by the Court, as being willful and intentional, thereby justifying the entry of a default.") (citations omitted).